**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re: IMAGITAS, INC., DRIVERS' PRIVACY
PROTECTION ACT LITIGATION           Case No. 3:07-md-2-J-32JRK

                       Applies to:   Case No. 3:07-cv-389-J-32HTS
                                       Case No. 3:07-cv-390-J-32HTS
                                         Case No. 3:07-cv-391-J-32HTS
                                         Case No. 3:07-cv-392-J-32HTS
                                         Case No. 3:07-cv-393-J-32HTS
                                         Case No. 3:07-cv-394-J-32HTS
                                         Case No. 3:07-cv-395-J-32HTS

## ORDER

Drivers in several states filed lawsuits against defendant Imagitas, Inc. and state officials alleging the defendants violated the federal Drivers' Privacy Protection Act of 1994, 18 U.S.C. §§2721-25 ("DPPA"), when they used state vehicle registration records to send unsolicited commercial advertisements to the drivers in their registration renewal envelopes. The MDL Panel consolidated the lawsuits before the undersigned and, by agreement of the parties, the case of Rine v. Imagitas, Inc., Case No. 3:06-cv-690-J-32HTS, was handled first while the remaining cases against Imagitas were stayed. The Court entered summary judgment in favor of Imagitas and against Rine and the Eleventh Circuit affirmed that decision. See Rine v. Imagitas, Inc., 590 F.3d 1215 (11th Cir. 2009). During the pendency of this litigation, the cases against the state officials were resolved by agreement[1] and the

---

[1]Those cases are Rine v. Dickinson, Case No. 3:07-cv-156-J-32HTS (filed in Florida); Kracum v. McCormack, Case No. 3:07-cv-978-J-32HTS (filed in Minnesota); Poynter v. Vincent, Case No. 3:07-cv-979-J-32HTS (filed in Missouri); and Bogard v. Morckel, Case No. 3:07-cv-980-J-32HTS (filed in Ohio). Plaintiffs also voluntarily dismissed one of the Florida

cases that remain are against Imagitas only.  Imagitas has now moved for judgment on the pleadings as to these remaining cases (brought by drivers in Massachusetts, Missouri, Ohio, Minnesota, and New York), arguing that the Eleventh Circuit's decision in Rine compels this Court to reach the same result in the remaining cases.  Judgment on the pleadings under Rule 12(c) is appropriate "[i]f upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." CompuCredit Holdings Corps. v. Akanthos Capital Mgmt, LLC, 661 F.3d 1312, 1314 (11th Cir. 2011) (quoting Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002)). Plaintiffs have agreed that two of these cases- - Kracum v. Imagitas, Inc., Case No. 3:07-cv-391-J-32HTS (the Minnesota case) and Leven v. Imagitas, Inc., Case No. 3:07-cv-393-J-32HTS (the New York case)- - are due to be dismissed.  Thus, the only remaining decision is whether judgment is due to be granted in Imagitas' favor in the cases brought by drivers in Massachusetts, Missouri, and Ohio.² Based on the Eleventh Circuit's decision in Rine, this

---

suits against Imagitas:  Gentile v. Imagitas, Case No. 3:07-cv-525-J-32HTS.

²These cases are Kendron v. Imagitas, Case No. 3:07-cv-389-J-32HTS and Mathias v. Imagitas, Case No. 3:07-cv-390-J-32HTS (both originally filed in Massachusetts); Ressler v. Imagitas, Case No. 3:07-cv-392-J-32HTS (originally filed in Missouri); Mathias v. Imagitas, Case No. 3:07-cv-394-J-32HTS and Bogard v. Imagitas, Case No. 3:07-cv-395-J-32HTS (both originally filed in Ohio).  Plaintiffs did not list either of the Massachusetts cases in the case style of their brief but the Court had denied a request for another law firm to file a brief on behalf of the Kendron plaintiffs (see Order, Doc. 173).  Although plaintiffs' brief never mentions the Massachusetts Mathias case, the brief argues against granting judgment in the Kendron case.  These arguments apply equally to the Massachusetts Mathias case; thus, Imagitas' motion is ripe as to all these cases (and plaintiffs have not argued otherwise).

Court finds that the answer is yes.[3]

### I.     The Eleventh Circuit's <u>Rine</u> decision

The history of this litigation and the pertinent background facts are fully recounted in the Eleventh Circuit's <u>Rine</u> decision and in this Court's underlying Order on summary judgment and are therefore not repeated here. See <u>Rine</u>, 590 F.3d at 1217-22; <u>In re: Imagitas, Inc.</u>, 3:07-md-2-J-32JRK, Doc. 104 at pp. 1-8. In <u>Rine</u>, the Eleventh Circuit ruled that Imagitas' DriverSource program did not violate the DPPA because it fell within the (b)(1) exception to the statute's general prohibition against disclosure. That exception permits disclosure of personal information by a state department of motor vehicles "[f]or use by any government agency" or "any private person or entity acting on behalf of a Federal, State, or local agency <u>in carrying out its functions</u>." 18 U.S.C. § 2721(b)(1) (emphasis supplied).

Thus, the Eleventh Circuit considered whether Imagitas' DriverSource program, and specifically, the aspect of the program that involved the inclusion of commercial advertising in motor vehicle registration renewal envelopes, was "carrying out a function" of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"). <u>Rine</u>, 590 F.3d at 1223. In addressing this question, the Eleventh Circuit explained that while an agency "function" is not defined by the DPPA, its definition is a matter of federal law, and the Court therefore looked to the term's common meaning to conclude that a "function" is "the action for which a person or thing is specially fitted, used or responsible or for which a thing exists; the

---

[3]Because the application of the Eleventh Circuit precedent in <u>Rine</u> results in a decision in Imagitas' favor in each of the remaining cases, the Court need not address Imagitas' alternative arguments that qualified immunity and plaintiffs' failure to join indispensable parties also compel judgment in its favor.

3

activity appropriate to the nature or position of person or thing." Id. (citing Webster's Third New International Dictionary 920 (3d ed. 1966)).  The Court determined it would therefore "defer to Florida as to the proper activities of the DHSMV." Id.  The Court then looked at various statutes in Florida as well as the contract between the Florida DHSMV and Imagitas to find that "[f]unding public programs through commercial advertising is a legitimate agency function within Florida." Id.

The Court next considered whether this legitimate agency function was nonetheless preempted by the DPPA but determined that it was not because the statute permits exceptions to the prohibition against disclosure and, provided the agency function "fit" the exception, the DriverSource program would not run afoul of the DPPA if Imagitas acted on behalf of the agency. Id. at 1224.

The Court then looked at whether Imagitas acted "on behalf of" the Florida DHSMV in implementing the DriverSource program.  Because that phrase was not defined by the DPPA, the Eleventh Circuit again turned to the common meaning and found that "on behalf of" meant "as the agent of" or "as representative of." Id. at 1224-25 (citing Bryan A. Garner, A Dictionary of Modern Legal Usage 83 (1987)).  The Eleventh Circuit found that Imagitas did act "on behalf of" the Florida DHSMV because a Florida statute (Fl. St. § 283.58) authorized state agencies to enter into contracts with private vendors to publish or produce public information materials financed by advertising and the Florida DHSMV and Imagitas had entered into just such a contract. Id. at 1225.

Finally, the Eleventh Circuit rejected plaintiffs' argument that a different subsection of the DPPA (§ 2721(b)(12)) more specifically addressed the conduct here and thus had to

4

be complied with instead.  The Court found that the (b)(1) subsection was a separate and independent exception not altered by (b)(12) and compliance with the (b)(1) terms was therefore sufficient to satisfy the statute.  Id. at 1225-26.

In sum, the Eleventh Circuit considered four questions to determine whether Imagitas violated the DPPA.  First, was the DriverSource program, which involves funding a public program through commercial advertising, a legitimate agency function within Florida?  Second, was this function preempted by the DPPA?  Third, was Imagitas acting on behalf of the Florida DHSMV in carrying out a legitimate agency function?  And fourth, did a different DPPA subsection ((b)(12)) have to be complied with instead?  The Eleventh Circuit's answers to the second and fourth questions would hold true for any activity that meets the terms of one of the DPPA statutory exceptions to the prohibition against disclosure and this Court therefore has no occasion to revisit those questions here.  See Murphy v. Federal Deposit Insurance Corp., 208 F.3d 959, 965-66 (11th Cir. 2000) (agreeing with Second, Eighth, Ninth and D.C. Circuits that because federal law is supposed to be unitary, a transferee district court should apply the law of the Supreme Court and its own circuit to issues of federal law).

Therefore, Imagitas' motion for judgment on the pleadings depends on the answers to the first and third questions:  Is funding a public program through commercial advertising a legitimate agency function within Massachusetts? Within Missouri? Within Ohio? And was Imagitas acting on behalf of a state agency in Massachusetts? In Missouri? In Ohio?  The answers require review of each state's statutes and their respective agency contracts with

Imagitas.[4] In making those inquiries, however, the Court is mindful of the Eleventh Circuit's binding pronouncement that "[t]here is nothing in the federal [DPPA] statute that prevents states from including advertisements in [their motor vehicle registration] renewal notices and the same statute specifically allows states to operate through private contractors." Rine, 590 F.3d at 1226.

**II.      Massachusetts**  Kendron v. Imagitas, Case No. 3:07-cv-389-J-32HTS and
Mathias v. Imagitas, Case No. 3:07-cv-390-J-32HTS

Like Florida, Massachusetts has statutes that support a finding that "[f]unding public programs through commercial advertising is a legitimate agency function." Rine, 590 F.3d at 1223. For example, Massachusetts permits commercial advertising in its highway rest stops with the income credited to the highway fund. See Mass. Gen. Laws ch. 81, §7C. Advertising is also sold in Massachusetts Bay Transportation Authority facilities. See Mass.

---

[4] The Court disagrees with Imagitas' reading of the Eleventh Circuit's Rine decision, which, according to Imagitas, hardly requires any consideration of state law. While the interpretation of the DPPA, a federal statute, is governed by federal law, the Eleventh Circuit "of course" "defer[red] to Florida as to the proper activities of the DHSMV." Rine, 590 F.3d at 1223. The Court intends to do no less here with regard to Massachusetts, Missouri and Ohio. Having said that, the Court also disagrees with plaintiffs, whose reading of Rine would require the Court to seek out nearly identical statutes and contracts in Massachusetts, Missouri and Ohio to those the Eleventh Circuit considered with regard to Florida. The Eleventh Circuit reviewed the Florida statutes and contract searching for confirmation that the funding of public programs through commercial advertising was a legitimate agency function in Florida and that the DriverSource program filled a function Florida had allotted to one of its agencies. The contract and several Florida statutes provided that evidence. See Rine, 590 F.3d at 1223-24. The Court will review the Massachusetts, Missouri and Ohio statutes and contracts looking for similar signs. In doing so, the Court rejects plaintiffs' contention that consideration of these states' contracts with Imagitas (the authenticity of which are not credibly challenged and which were indisputedly incorporated by reference into the various complaints) necessitates converting this motion into a prejudicially premature motion for summary judgment; indeed, plaintiffs' brief makes repeated references to these contracts and attaches approximately 278 pages from them.

Gen. Laws ch. 161A, §3(n). Additionally, Massachusetts law permits the Massachusetts Operational Services Division to enter into contracts with third parties on behalf of the Massachusetts Registry of Motor Vehicles and any other executive department for all the goods and services the registry and other departments need. See Mass. Gen. Laws ch. 30, §§51-52. The contract entered into with Imagitas was a Commonwealth of Massachusetts standard form contract, issued by the Massachusetts Operational Services Division and incorporating the Request for Response. See Doc. 166-1 at p. 84. The Request for Response, issued by the Commonwealth of Massachusetts Registry of Motor Vehicles, solicited proposals for bids "to assist [the Registry] in carrying out its registration renewal functions" including "reduc[ing] [Registry] costs and potentially generat[ing] revenues to the Registry to further defray costs or help fund other [Registry] programs." Doc. 166-1 at p.9. The Request for Response explained that the program "would be funded by the solicitation and sale of commercial advertising by the Contractor for insertion into the Registry's Registration Renewal Notice mailing" and that "[a]dvertising revenues must be sufficient to cover all motor vehicle registration renewal tasks that the Contractor will perform." Id.

Upon review of the contract between Massachusetts and Imagitas, and deferring to Massachusetts, which has demonstrated in similar circumstances that it finds it appropriate for its state agencies to offset costs through commercial advertising, the Court finds that in Massachusetts, like in Florida, Imagitas was "acting on behalf of" a state agency in carrying out legitimate functions appropriately delegated to that agency. Judgment on the pleadings is therefore due to be entered in Imagitas' favor in the two Massachusetts cases.

### III.    **Missouri**    Ressler v. Imagitas, Case No. 3:07-cv-392-J-32HTS

Like Florida (and Massachusetts), Missouri has statutes that demonstrate that Missouri gives its agencies the authority to offset costs through commercial advertising. For example, road signs, bus shelters and other programs and facilities related to Missouri's state highways may be funded through commercial advertising. See Mo. Rev. Stat. § 227.220; Wall USA, Inc. v. City of Ballwin, 53 S.W.3d 168, 169 (Mo. App. E.D. 2001). Additionally, Missouri's own state version of the DPPA directs the Department of Revenue (the state agency that contracted with Imagitas) to disclose personal information as permitted by the federal DPPA statute (which statute, according to Rine, would not prohibit a state from sending commercial advertising with registration renewal information). Finally, Missouri's Director of the Department of Revenue, who is authorized by statute to procure contractual services for each division, Mo. Rev. Stat. § 32.050 1.(2), and is ordered to arrange the functions and procedures of each division "as is necessary to bring about economy and efficiency" Mo. Rev. Stat. § 32.050 2.(2), entered into a contract with Imagitas under the authority of the State of Missouri Office of Administration to provide the same services to Missouri that Imagitas supplied to Florida. In fact, the Missouri contract simply incorporated and adopted the components of the Florida contract, including Florida's invitation to negotiate (provided that various references to Florida law were deemed to be references to Missouri law). Just as the Eleventh Circuit determined that the contract with Florida supported a finding that Imagitas acted on behalf of Florida in mailing out the registration renewal envelopes with commercial advertising inserts, the same contract, construed to make appropriate references to Missouri law, supports a finding that Imagitas acted on

behalf of Missouri in mailing out the Missouri registration renewal envelopes with commercial advertising inserts.[5]  Judgment on the pleadings is therefore due to be entered in Imagitas' favor in the Missouri case.

**IV.   Ohio**        Mathias v. Imagitas, Case No. 3:07-cv-394-J-32HTS and
               Bogard v. Imagitas, Case No. 3:07-cv-395-J-32HTS

As with Florida (and Massachusetts and Missouri), Ohio too has statutes that authorize its state agencies to underwrite their program costs with commercial advertising. For example, Ohio's department of transportation may contract with private persons and businesses for the operation, maintenance and marketing of Ohio's tourist-oriented directional sign program and its highway directional signs, to be paid through fees collected from eligible attractions and businesses participating in these programs.  Ohio Rev. Code Ann. §§ 4511.101, 4511.103.  Ohio's department of transportation also sells commercial advertising space on buildings at its roadside rest areas to fund the cost of improving the rest

---

[5]As plaintiffs correctly note, the contract itself cites Missouri Revised Statute § 34.046, a law which authorizes Missouri's commissioner of administration to contract with other government entities for the purchase of supplies and to participate in purchasing agreements whereby supplies are procured in accordance with a contract established by another governmental entity.  Mo. Rev. Stat. § 34.046.  Plaintiffs argue that because Imagitas is not a government entity, the Commissioner was without authority to enter into the contract. However, the contract does not necessarily cite this statute as the source of its authority (the reference is in the section describing the contents of the agreement) and, in fact, a more plausible explanation for the citation is that Missouri was simply adopting the contract entered into by the State of Florida, which is, of course, another government entity. However, the Court need not resolve the significance of this citation reference because it is beyond the scope of the motion before the Court- - plaintiffs never alleged that the Imagitas contracts violated state law and the Court has found that funding a public program through commercial advertising is a legitimate agency function within Missouri and, under the terms of the contract, Imagitas was acting on behalf of a Missouri state agency in mailing the registration renewal packets.

9

areas. Ohio Rev. Code Ann. § 5515.08. Ohio has authorized its Director of Public Safety (whose department enforces laws relating to motor vehicle registration) to enter into contracts and other business arrangements for all divisions of the department to accomplish the department's functions; the Director also has the authority to establish policies governing department business. Ohio Rev. Code Ann. §§ 5502.01, 5502.011. The Director of Public Safety is further permitted to contract with third parties for the preparation of motor vehicle registration lists to be provided to department and authorized law enforcement agencies. Ohio Rev. Code Ann. § 4503.26(B). Additionally, like Missouri, Ohio has its own statute based on and implementing the DPPA and disclosures permitted under the DPPA would be authorized by Ohio's statute as well. Ohio Rev. Code Ann. § 4501.27(B)(2)(a). Ohio's contract with Imagitas incorporates the solicitation for bids which sought proposals "for a cooperative marketing arrangement" whereby the successful bidder would design, print, assemble and deliver Ohio's motor vehicle registration renewals at no cost to Ohio to be underwritten by sales of advertisements to be included in the mailing, all in an effort to improve the registration renewal program while reducing its costs. See Doc. 175-3 at pp. 4-5. Thus, including commercial advertising in motor vehicle registration renewal notices is a legitimate agency function in Ohio and Imagitas acted on Ohio's behalf in carrying out the DriverSource program. Judgment on the pleadings is therefore due to be entered in Imagitas' favor in the two Ohio cases.

**V.    Conclusion**

In reaching these determinations, the Court has no occasion to reach plaintiffs' arguments that some of the states may have permitted conduct beyond the terms of their

contracts or statutes because the questions here (as initially framed by the allegations of plaintiffs' complaints and resolved through guidance from the Eleventh Circuit) are limited to determining whether Imagitas' contracts with the various state agencies in Missouri, Massachusetts and Ohio violated the federal DPPA statute. See Rine; 590 F.3d at 1223 ("Imagitas is only liable if its DriverSource program was not a permissible use" of driver information under the DPPA). Likewise, this Court need not address plaintiffs' contention (raised in their brief but not anywhere in their complaints) that Imagitas' manipulation of the data to create the "household view" was not known or understood by the state agencies with whom Imagitas contracted. As the Eleventh Circuit has affirmed, the DPPA permits the inclusion of commercial advertisements in states' registration renewal envelopes. Rine, 590 F.3d at 1226. Whether those ads are placed randomly or based on a strategic algorithm is beside the point in these lawsuits because, for purposes of considering compliance with the DPPA, the analysis is the same. Thus, the Court finds that Imagitas' DriverSource program as operated in Massachusetts, Missouri and Ohio does not violate the DPPA.

Accordingly, it is hereby

**ORDERED**:

1.     Imagitas' Motion for Judgment on the Pleadings, filed as Doc. 166 in 3:07-md-2-J-32JRK, is **GRANTED**.  Judgment is entered in favor of Imagitas as to the cases of Kendron v. Imagitas, Case No. 3:07-cv-389-J-32HTS; Mathias v. Imagitas, Case No. 3:07-cv-390-J-32HTS; Kracum v. Imagitas, Case No. 3:07-cv-391-J-32HTS; Ressler v. Imagitas, Case No. 3:07-cv-392-J-32HTS; Leven v. Imagitas, Case No. 3:07-cv-393-J-32HTS; Mathias v. Imagitas, Case No. 3:07-cv-394-J-32HTS; Bogard v. Imagitas, Case No. 3:07-cv-395-J-

32HTS.  The Clerk shall enter judgment accordingly.

2. Following the entry of judgment in Rine v. Imagitas, Imagitas filed a motion for taxation of costs (Doc. 115 in 3:06-cv-690-J-32HTS) which the Court held in abeyance while the case was on appeal.  The Court will continue to stay its consideration of any costs motions until all appeals are resolved.  If no new appeals are taken, Imagitas shall confer with plaintiffs in a further attempt[6] to resolve the outstanding costs motion in Rine (and any new ones timely filed) and shall report back to the Court no later than **March 1, 2012** as to whether the parties were able to reach an agreement.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of December, 2011.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record
Jeffery N. Luthi, Clerk of the Panel

---

[6] Lead counsel for both sides are required to make good-faith efforts this time around.